## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SHERRI LITTON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 03-2377-KHV** |
| MAVERICK PAPER CO., et al., ) | |
| ) | |
| Defendants. ) | |
| —————————————————————————) | |

## MEMORANDUM AND ORDER

Sherri Litton ("S. Litton"), Ronald Litton ("R. Litton") and Paper Consulting And Design, LLC ("Paper Consulting") bring suit against Maverick Paper Company ("Maverick"), Robert W. Hatch and Richard Williamson, for claims arising out employment and shareholder relationships with Maverick.[1] Specifically, plaintiffs assert claims for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. as amended, and state law claims for wrongful termination, retaliatory discharge, breach of implied contract, breach of shareholders agreement, breach of contract, breach of duty of good faith and fair dealing, fraud, breach of fiduciary duty and fraudulent misrepresentation. This matter comes before the Court on Defendants' Motion To Dismiss (Doc. #16) filed March 22, 2004.[2]  For reasons stated below, the Court sustains the motion in part.

———————————————

[1]     It is unclear why Paper Consulting is named as plaintiff. No claims are asserted on its behalf. See Complaint (Doc. #1) filed July 23, 2003.

[2]     Defendants caption their motion as a motion to dismiss but state that they bring it under both Rule 56 and Rule 12, Fed. R. Civ. P. See Defendants' Motion To Dismiss (Doc. #16). In their supporting memorandum, defendants alternatively state that they seek summary judgment. The only evidence which defendants present are pages from Maverick's employment manual, see Exhibit A to
(continued...)

**I.       Legal Standards**

In ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well pleaded facts and

views them in a light most favorable to plaintiffs.  Zinermon v. Burch, 494 U.S. 113, 118 (1990).  The

Court makes all reasonable inferences in favor of plaintiffs, and liberally construes the pleadings.  Rule 8(a),

Fed. R. Civ. P.; Lafoy v. HMO Colo., 988 F.2d 97, 98 (10th Cir. 1993).  The Court may not dismiss a

cause of action for failure to state a claim unless it appears beyond doubt that plaintiffs can prove no set of

facts which would entitle them to relief.  Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan., 927

F.2d 1111, 1115 (10th Cir. 1991).  Although plaintiffs need not precisely state each element of their claims,

they must plead minimal factual allegations on material elements that must be proved.  Hall v. Bellmon, 935

F.2d 1106, 1110 (10th Cir. 1991).  Defendants bear the burden to show that plaintiffs cannot prove any

set of facts which would entitle them to relief.  See, e.g., Gould Elec., Inc. v. United States, 220 F.3d 169,

178 (3d Cir. 2000); Beck v. Deloitte & Touche, 144 F.3d 732, 735-36 (11th Cir. 1998); Schrag v.

Dinges, 788 F. Supp. 1543, 1552 (D. Kan. 1992).

**II.      Facts**

Plaintiffs allege the following facts, which the Court accepts as true for purposes of the motion to

---

[2](...continued)

Defendants' Memorandum In Support Of Their Motion To Dismiss, Or In The Alternative, Motion For
Summary Judgment ("Defendants' Memorandum") (Doc. #17) filed March 22, 2004, and copies of the
executive employment agreement, personal services agreement and shareholders agreement between, inter
alia, R. Litton and Maverick, see Exhibits A, B and C to Defendants' Reply Memorandum In Support Of
Their Motion To Dismiss, Or In The Alternative, Motion For Summary Judgment ("Defendants' Reply")
(Doc. #27) filed June 16, 2004.  In ruling on defendants' motion to dismiss, the Court may consider these
documents because the complaint refers to them and they are central to plaintiffs' claims.  See GFF Corp.
v. Assoc. Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).  The Court therefore considers
defendants' motion solely as one to dismiss under Rule 12, Fed. R. Civ. P.

dismiss.

### A.    Maverick And Its Shareholders

Maverick Paper Company formed in 1995 and hired R. Litton to organize its operations.[3]  In 1996, R. Litton organized a group of two outside investors and five employees (including himself) to purchase the company.  Robert Hatch and Richard Williamson were to be majority shareholders and R. Litton was to be a minority shareholder.  During negotiations, in an effort to induce R. Litton to agree to the transaction, Hatch represented (1) that R. Litton would have authority to run Maverick as president and chief operating officer; (2) that Maverick would maintain its viability in the marketplace by promptly paying vendors and keeping tight credit controls to receive favorable pricing from vendors; (3) that R. Litton would have control over personnel decisions including hiring, firing and job placement; (4) that Hatch and Williamson would support continuing efforts of R. Litton to continue Maverick's role as a paper distributor and converting company, enabling it to maintain market share in Kansas City; and (5) that Hatch and Williamson were committed to fostering a long-term commitment and special business relationship with R. Litton and his family.  Hatch knew that the statements were false and had no intention of carrying them out.  In deciding to enter the transaction, however, R. Litton reasonably relied on the statements.

In March of 1997, Maverick entered into a contract with Omaha Paper Company in which Kevin Powell, Robert Powell, Robert A. Merrill, C. Scott Thompson, Daniel K. Robinson and Dean Wilson (the "Powell Group") purchased 25 per cent of Maverick stock for $435,000.00, or $14.76 per share.  The Powell Group understood that Hatch and Williamson would sell them an addition eight per cent of Maverick

---

[3]        The complaint does not allege who formed the company.

stock, giving them 33 per cent ownership in the company.

On March 11, 1997, Maverick and its shareholders, including R. Litton, Hatch and Williamson, executed a shareholders agreement. See Exhibit C to Defendants' Reply. Under the agreement, only employees and elected members of the board of directors could hold stock in the company. Shareholders could not sell or otherwise dispose of shares except in accordance with the agreement. A "redemption event" occurred if a stockholder died, became disabled or was terminated from his or her employment or board position. If a redemption event occurred, the agreement required the company to redeem the individual's shares for the appraised value. If an employee's termination for cause or breach of confidentiality triggered a redemption event, the agreement allowed the company to redeem shares for the appraised value or purchase price, whichever was lower.

In 1997, Maverick suffered cash flow problems. Certain individuals, including R. Litton and S. Litton, agreed to receive lower pay in return for options to redeem stock at $1.67 per share after three years. S. Litton exercised her option in 2000.

At an unspecified point in time, relations between Maverick and the Powell Group soured. Hatch instructed Maverick's controller, Debbie Disch, to devalue Maverick stock to $1.67 per share to prevent the Powell Group from bailing out. In addition, Hatch and Williamson sold Maverick the shares which they had earmarked for the Powell Group. Hatch and Williamson each received more than $50,000.00 – considerably more than $1.67 per share – for their shares. They did not get board approval for the transactions, and no other shareholders had the opportunity to redeem shares at that price. Later, Maverick shares were devalued to one cent per share without board approval.

Hatch and Williamson did not comply with the shareholders agreement with regard to the transfer,

sale and disposal of company shares.  Between 1996 and 2002, Hatch and Williamson owned the majority of stock in Maverick.  During this time, Hatch and Williamson transferred Maverick stock between themselves "off-the-record," trading for stocks in other companies.  Hatch and Williamson traded stock without board approval and without entering the transactions into the minutes of board meetings.

As members of the board of directors and/or management of Maverick, Williamson and Hatch owed plaintiffs a fiduciary duty and duty of good faith and fair dealing.  Williamson and Hatch breached these duties by operating Maverick as a personal corporation.  Their actions have caused plaintiffs significant injury including devaluing the value of their shares in Maverick and preventing them from recovering amounts due for their shares.

**B.     Employment Of S. Litton And R. Litton**

On March 5, 1997, Maverick entered into an executive employment agreement with R. Litton.  <u>See</u> Exhibit A to <u>Defendants' Reply</u>.  The agreement provided an initial term of three years, which automatically renewed unless notice of termination was given 180 days before the renewal date.  Under the agreement, if Maverick terminated the agreement without cause before the end of the employment period, it had to pay R. Litton, in 24 monthly payments, two times his base salary and the higher amount of his incentive compensation in the past two years.

On October 15, 1996, Maverick hired S. Litton, R. Litton's wife, as sales representative. Maverick later promoted her to retail store manager, then operations manager.  As operations manager, S. Litton performed human resource duties including enforcing company employment policies on sexual harassment and discrimination.  Of managerial and supervisory employees at Maverick, S. Litton was the only female and the lowest paid.  The next lowest paid manager earned at least $11,000.00 more than she

5

did.

While operations manager, S. Litton discovered that plant employees were bringing pornographic magazines into the work building and company vehicles. She alerted supervisors JD Battenburg and Jim Armstrong. Maverick investigated the matter and directed employees not to bring pornographic materials into the workplace because it created a hostile working environment and perpetuated an anti-female atmosphere.

In the late fall of 2001, while meeting with Battenburg in his office, S. Litton was exposed to pornography on Battenburg's company computer. S. Litton reported the incident to R. Litton, who investigated the matter by looking at "cookies" and internet files on the computer. R. Litton discovered that during work hours, for at least two years, Battenburg had been viewing pornography sites on his company computer in violation of company policy. On January 9, 2002, pursuant to company policy, R. Litton reported Battenburg's pornography use to Hatch.

On January 12, 2002, Maverick notified S. Litton that as part of a company restructuring which would also include other employees, it was terminating her employment effective January 22, 2002. The alleged reduction in force did not follow Maverick's written layoff policies, and the company did not lay off any other employees. In fact, the reason for the termination was because of sex and in retaliation for her complaint about the pornography on Battenburg's computer.

Under the shareholders agreement, the termination of S. Litton's employment triggered a redemption event which required Maverick to redeem her shares at their reasonable appraised value. Defendants breached the shareholders agreement by not redeeming her shares.

On January 14, 2002, in retaliation for R. Litton reporting Battenburg's pornography, Hatch

breached the executive employment agreement by demoting him to work as a salesman under a personal services agreement.[4]  See Exhibit B to Defendants' Reply.  Under this arrangement, R. Litton worked as an independent contractor, not an employee, and he lost benefits and received much lower pay.  Hatch thereafter assumed the role of chief operating officer.

Under the shareholders agreement, the termination of R. Litton as president triggered a redemption event which required Maverick to redeem his shares at their reasonable appraised value.  Defendants breached the shareholders agreement by not redeeming his shares.  Maverick attempted to vitiate the redemption event by allowing R. Litton to remain as director and shareholder for a period of time.

On November 23, 2002, R. Litton told Hatch that S. Litton was going to file a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Immediately afterwards, Hatch terminated the personal services agreement with R. Litton.

On May 1, 2003, R. Litton's position on the board of directors for Maverick terminated.

### C.    Loans By R. Litton To Maverick

On December 7, 2001, R. Litton loaned $27,300.00 to Maverick. Said loan is due and payable upon demand.  R. Litton has demanded payment of the loan and Maverick has failed and/or refused to pay.

R. Litton also made two other loans to Maverick – a demand note of $1,000.00 and a capital loan of $12,000.00.  R. Litton has demanded payment of the loans and fulfilled all conditions precedent to them.  Maverick has failed or refused to tender amounts due and owing.

---

[4]      In some places, the Complaint states that the demotion occurred in January of 2001.  See Complaint (Doc. #1) at ¶¶ 39, 62, 63.  Based on context, however, it appears that the demotion must have occurred in 2002.  See id. at ¶ 22 (referring to R. Litton's acts as president in January of 2002).

### III.   Analysis

S. Litton asserts the following claims: (1) employment discrimination and retaliation by Maverick in violation of Title VII (Counts I and II); and (2) retaliatory discharge by all defendants in violation of public policy under Kansas law (Count VI).

R. Litton asserts the following claims: (1) retaliation by Maverick in violation of Title VII (Count III); (2) fraudulent misrepresentation by Hatch (Count XIV); (3) breach of the executive employment agreement by all defendants (Count IV); (4) breach of the personal services agreement by all defendants (Count V); (5) retaliatory discharge by all defendants in violation of public policy under Kansas law (Count VII); and (6) breach of demand notes by all defendants (Count X).

S. Litton and R. Litton jointly assert the following claims: (1) breach of implied contract by Maverick (Count VIII); (2) breach of fiduciary duty by Hatch and Williamson (Count XIII); (3) breach of the shareholders agreement by all defendants (Count IX); (4) tortious breach of duty of good faith and fair dealing by all defendants (Count XI); and (5) fraud by all defendants (Count XII).

The individual defendants argue that plaintiffs do not state claims against them in their individual capacities for breach of the executive employment agreement (Count IV), breach of the personal services agreement (Count V) and breach of the shareholders agreement (Count IX).  All defendants argue that under Kansas law, plaintiffs have failed to state valid claims for retaliatory discharge in violation of public policy (Counts VI and VII), breach of implied contract (Count VIII), and tortious breach of a duty of good

8

faith and fair dealing (Count XI).[5]

        **A.**       **Whether R. Litton States Claims Against Hatch And Williamson For Breach Of The Executive Employment Agreement And Breach Of The Personal Services Agreement (Counts IV And V)**

        Hatch and Williamson assert that because they are not parties to the executive employment agreement or the personal services agreement, R. Litton cannot bring claims against them for breach of such agreements. See Defendants' Memorandum at 12-13. R. Litton responds that he has sufficiently alleged that Hatch and Williamson are liable in their individual capacities for such claims. See Plaintiffs' Opposition To Defendants' Motion To Dismiss ("Plaintiffs' Opposition") (Doc. #24) filed May 24, 3004 at 7. The complaint does allege that Hatch and Williamson are personally liable for breaching the executive employment and personal services agreements. See Complaint ¶¶ 93, 96. The allegations are conclusory, however, and the complaint does not assert facts which support the conclusions. To the contrary, it states that in terminating the executive employment agreement and the personal services agreement, Hatch acted on behalf of Maverick. Id. ¶¶ 59, 66.[6] Construing the factual allegations in the light most favorable to plaintiff, the complaint does not allege facts sufficient to hold Hatch and Williamson individually liable for

---

       [5]       Defendants' motion also asserts that plaintiffs' Title VII claims are time barred (Counts I, II and III). See Defendants' Memorandum (Doc. #17) at 11-12. In their reply brief, however, defendants state that they withdraw this part of their motion. See Defendants' Reply (Doc. #27) at 5.

       Defendants' motion does not challenge the following claims: R. Litton's claim against Maverick for breach of the executive employment agreement (Count IV); R. Litton's claim against Maverick for breach of the personal services agreement (Count V); R. Litton's claim against all defendants for breach of demand notes (Count X); R. Litton's claims against Hatch for fraudulent misrepresentation (Count XIV); plaintiffs' claims against Hatch and Williamson for breach of fiduciary duty (Count XIII); plaintiffs' claims against Maverick for breach of the shareholders agreement (Count IX); and plaintiffs' claims against all defendants for fraud (Count XII).

       [6]       The complaint alleges no individual involvement by Williamson regarding termination of the agreements.

breaching the executive employment and personal services agreements.

R. Litton contends that the Court should pierce the corporate veil because Hatch and Williamson failed to observe corporate formalities and engaged in self-dealing and fraud.  See Plaintiffs' Opposition at 7-10.  The complaint, however, does not assert such a theory.  See United States v. A & C Invs., Inc., 513 F. Supp. 589, 591 (N.D. Ill. 1981) (complaint which did not refer to claim for piercing corporate veil failed to state such claim).  The Court will therefore dismiss the claims of R. Litton against Hatch and Williamson for breach of the executive employment and personal services agreements (Counts IV and V).

**B.     Whether Plaintiffs State Claims Against Hatch And Williamson For Breach Of The Shareholders Agreement (Count IX)**

Hatch and Williamson contend that plaintiffs do not state claims against them for breach of the shareholders agreement.  Hatch and Williamson admit that they are parties to the shareholders agreement but assert that plaintiffs do not assert the claims against them in their individual capacities or in their capacities as shareholders.  See Defendants' Memorandum at 12.  The Court disagrees.  The complaint clearly alleges such claims against Hatch and Williamson individually.  See Complaint ¶ 116 ("each and every Defendant" breached shareholders agreement).

Hatch and Williamson contend that as shareholders, they owed no duties to other shareholders. The cases which they cite, however, do not involve an alleged breach of a written agreement between shareholders.  See In re Villa West Assoc., 193 B.R. 587, 593 (Bankr. D. Kan. 1996) (mere ownership of stock does not create fiduciary duty; it arises when stockholder takes role in corporate management and acts to dominate, interfere with or mislead other stockholders in exercising their rights); Hunt v. Data Mgmt. Res., Inc., 26 Kan. App.2d 405, 407, 985 P.2d 730, 732 (1999) (minority shareholder owes no fiduciary

10

duty to corporation).  On this record, Hatch and Williamson have not conclusively shown that plaintiffs have no claims against them for breaching the shareholders agreement.  Defendants' motion is overruled on this ground.

> **C.   Whether Plaintiffs State Claims For Retaliatory Discharge In Violation Of Public Policy Under Kansas Law (Counts VI and VII)**

Plaintiffs allege state law claims for retaliatory discharge in violation of public policy.  Specifically, plaintiffs contend that the State of Kansas has recognized a public policy in favor of eliminating sexual harassment in the workplace and that defendants fired them in violation of that policy.  Kansas employment law is based on the doctrine of employment at will.  Absent an express or implied contract of fixed duration, or where recognized public policy concerns are raised, employment is terminable at the will of either party.  Frye v. IBP, Inc., 15 F. Supp.2d 1032, 1046 (D. Kan. 1998).  Kansas narrowly recognizes two public policy exceptions to the rule of employment at will: "(1) when an employer discharges an employee for exercising rights under the workers compensation laws and (2) when an employer discharges an employee for a good faith report or threat to report a serious infraction of rules, regulations, or law pertaining to the public health, safety, and the general welfare by a co-worker or employer (whistleblowing)."   Riddle v. Wal-Mart Stores, Inc., 27 Kan. App. 2d 79, 85, 998 P.2d 114, 119 (2000).[7]

To prevail on their retaliatory discharge claims, plaintiffs must demonstrate either (1) that Kansas

---

[7]      The Kansas Supreme Court has also recognized a public policy exception when an employer discharges an employee for exercising rights under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 et seq.  See Hysten v. Burlington N. Santa Fe Ry. Co., 277 Kan. 551, 85 P.3d 1183 (2004), as modified, No. 90,730 (June 1, 2004).  In so holding, the Kansas Supreme Court found that the public policy underlying FELA is identical to the public policy underlying the Kansas Workers Compensation Act. Id., 277 Kan. at 557, 563-64, 85 P.3d at 1187, 1191.

courts have recognized their retaliatory discharge claims as exceptions to its employment at will doctrine or (2) that Kansas public policy protects the conduct on which their retaliatory discharge claims are based and that they have no alternative state or federal remedy.  See Harris v. Bd. of Pub. Util. of Kansas City, Kan., 757 F. Supp. 1185, 1194 (D. Kan. 1991).  Plaintiffs cite no authority which recognizes their claims as an exception to the employment at will doctrine.  Furthermore, plaintiffs have adequate alternative remedies under Title VII and the Kansas Acts Against Discrimination ("KAAD"), K.S.A. § 44-101 et seq. See Lines v. City of Ottawa, Kan., No. 02-2248, 2003 WL 21402582, at 10 (D. Kan. June 16, 2003) (no state law retaliatory discharge claim where plaintiff had adequate remedy under KAAD); Polson v. Davis, 635 F. Supp. 1130, 1149-50 (D. Kan. 1986) (no public policy exception for sex discrimination and retaliation because plaintiff has existing alternative remedy), aff'd, 895 F.2d 705 (10th Cir. 1990); Tarr v. Riberglass, Inc., No. 83-4234, 1984 WL 1481, at *2-3 (D. Kan. Feb. 3, 1984) (no public policy exception for age discrimination because plaintiff has existing alternative remedy).  Plaintiffs therefore fail to state claims for retaliatory discharge in violation of public policy.

### D.    Whether Plaintiffs State Claims For Breach Of Implied Contract (Count VIII)

Maverick argues that plaintiffs do not state claims for breach of implied contract because (1) plaintiffs' claims rely solely on the employee handbook; (2) the employee handbook states that it does not create a contract or change an employee's at will status; and (3) plaintiffs present no evidence that Maverick intended its employee handbook to create a contract.

Absent an express or implied contract, Kansas law presumes employment to be at will.  See Nguyen v. IBP, Inc., 905 F. Supp. 1471, 1486 (D. Kan. 1995); Inscho v. Exide Corp., 29 Kan. App.2d 892, 865, 33 P.3d 249, 252 (2001).  An implied contract of employment arises from facts and

circumstances showing mutual intent to contract.  Kastner v. Blue Cross & Blue Shield, Inc., 21 Kan. App.2d 16, 23, 894 P.2d 909, 915 (1995) (citing Allegri v. Providence-St. Margaret Health Ctr., 9 Kan. App.2d 659, 663, 684 P.2d 1031, 1035 (1984)).  The intent of the contracting parties is normally a question of fact for the jury, and existence of an implied contract of employment requires a factual inquiry. Frye, 15 F. Supp.2d at 1044.  Factors to be considered in determining whether the parties had a mutual intent to contract include the understanding and intent of the parties, which are ascertainable from written and oral negotiations, the conduct of the parties, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to make clear the intention of the parties at the time the employment relationship commenced. Id. at 1044-45 (citations omitted).  The parties must have a mutual intent to enter into an employment contract; plaintiffs' unilateral expectations of continued employment are insufficient to create a contract.  Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1492 (10th Cir. 1995).

Plaintiffs assert that they have sufficiently alleged the existence of an implied employment contract. The Court agrees.  The complaint alleges that Maverick created an implied contract through its written policies, recruitment information and custom.  See Complaint ¶ 109.  These allegations are sufficient to put defendants on notice of plaintiffs' claims.  See Rule 8(a), Fed. R. Civ. P.  The fact that the employment manual contains a disclaimer is not dispositive.  See Wilkinson v. Shoney's, Inc., 269 Kan. 194, 216, 4 P.3d 1149, 1164 (2000) (employment manual not determinative of implied contract issue where certain provisions expressly or impliedly contradict disclaimer); Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 538 n.2 (10th Cir. 1995) (disclaimer only one factor in determining parties' intent to form implied

13

contract); Bell v. Bd. of County Comm'rs of Jefferson County, No. 03-2148-KHV, 2004 WL 624972, *15 (D. Kan. March 29, 2004).  In ruling on defendants' motion to dismiss, the Court must accept plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs.  See Lafoy, 988 F.2d at 98.  Under this standard, plaintiffs have sufficiently stated claims for breach of implied contract. Defendants' motion is overruled on this ground.

     **E.**    **Whether Kansas Law Recognizes A Cause Of Action For Tortious Breach Of Duty Of Good Faith And Fair Dealing (Count XI)**

Plaintiffs allege that defendants are liable for tortious breach of the duty of good faith and fair dealing because their course of dealings gave rise to a special relationship and defendants breached legal duties which they owed to plaintiffs.  See Complaint ¶¶ 125, 126.  Defendants argue that Kansas law does not recognize such a claim.  In support of their argument, defendants cite Charles R. Wood Oil Co. v. GMAC Commercial Mortgage, No. 02-2206-JWL, 2003 WL 21555744 (D. Kan. July 2, 2003).  In that case, defendant filed a motion to dismiss plaintiff's claim for tortious breach of the covenant of good faith and fair dealing.  Plaintiff did not respond to the motion, and the court issued an order to show cause why it should not dismiss the claim.  Plaintiff responded to the show cause order and stated that it did not oppose the motion.  Judge Lungstrum dismissed the claim, stating that Kansas law does not recognize a claim for tortious breach of the covenant of good faith and fair dealing.  Id. at *1.  Defendants cite Judge Lungstrum's statement to support their argument that Kansas law does not recognize such a claim in this case. Defendants' citation is disingenuous, however, because the case before Judge Lungstrum involved a commercial contract and the authority cited therein states that Kansas law does not recognize the claim in a commercial contract setting.  See Horizon Holdings, LLC v. Genmar Holdings, Inc., 241 F. Supp.2d

1123, 1148 (D. Kan. 2002); <u>see also</u> <u>Pizza Mgmt., Inc. v. Pizza Hut, Inc.</u>, 737 F. Supp. 1154, 1167 (D. Kan. 1990). This case involves employment and shareholder relationships. Defendants cite no authority which supports their argument that Kansas law does not recognize the claim in this context.

Likewise, the authority which plaintiffs cite is not helpful. Plaintiffs assert merely that Kansas law imposes a fiduciary duty on corporate officers and directors. <u>See</u> <u>Plaintiffs' Response</u> at 17-18 (citing <u>Mynatt v. Collis</u>, 274 Kan. 850, 57 P.3d 513 (2002) (breach of fiduciary duty claims against corporate vice president), <u>Newton v. Hornblower, Inc.</u>, 224 Kan. 506, 582 P.2d 1136 (1978) (breach of fiduciary duty claims against corporate directors) and <u>Delano v. Kitch</u>, 542 F.2d 550 (10th Cir. 1976) (breach of fiduciary duty claims against corporate officer and directors)). Plaintiffs cite no authority which addresses whether Kansas law recognizes a claim for tortious breach of the duty of good faith and fair dealing in this context.

Defendants bear the burden to show that plaintiffs cannot prove any set of facts which would entitle them to relief. <u>See</u> <u>Gould Elec.</u>, 220 F.3d at 178; <u>Beck</u>, 144 F.3d at 735-36; <u>Schrag</u>, 788 F. Supp. at 1552. On this record, they have not done so. The Court therefore overrules defendants' motion to dismiss the claim for breach of duty of good faith and fair dealing.

**IT IS THEREFORE ORDERED** that <u>Defendants' Motion To Dismiss</u> (Doc. #16) filed March 22, 2004 be and hereby is **SUSTAINED in part.** The Court dismisses the following claims: R. Litton's claims against Hatch and Williamson for breach of the executive employment contract (part of Count IV); R. Litton's claims against Hatch and Williamson for breach of the personal services agreement (part of Count V); S. Litton's claim against all defendants for retaliatory discharge in violation of public policy under Kansas law (Count VI); and R. Litton's claim against all defendants for retaliatory discharge in violation of

public policy under Kansas law (Count VII).

The following claims remain in the case: S. Litton's claims against Maverick for employment discrimination and retaliation under Title VII (Counts I and II); R. Litton's claims against Maverick for employment retaliation under Title VII (Count III); R. Litton's claims against Maverick for breach of the executive employment agreement (part of Count IV); R. Litton's claims against Maverick for breach of the personal services agreement (part of Count V); plaintiffs' claims against Maverick for breach of implied contract (Count VIII); plaintiffs' claims against all defendants for breach of the shareholders agreement (Count (IX); R. Litton's claims against all defendants for breach of demand notes (Count X); plaintiffs' claims against all defendants for tortious breach of duty of good faith and fair dealing (Count XI); plaintiffs' claims against all defendants for fraud (Count XII); plaintiffs' claims against Hatch and Williamson for breach of fiduciary duty (Count XIII); and R. Litton's claim against Hatch for fraudulent misrepresentation (Count XIV).

Dated this 28th day of January, 2005 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

16